IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CARLOS CAREY, #245 045, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:13-CV-799-WHA |
| | ) | [WO] |
| WARDEN JONES, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed, by Carlos Carey ["Carey"], a state inmate incarcerated at the Easterling Correctional Facility in Clio, Alabama. Carey challenges actions which occurred during his incarceration at the Bullock Correctional Facility from September 2013 to filing this complaint on October 18, 2013. He alleges a denial of access to the courts and the prison administrative grievance process because of Defendants' interference with his legal mail.  Named as defendants are Warden Kenneth Jones, Warden Sandra Giles, Warden Rene Mason, Sergeant Dominic Whitley, Captain Jenkins, and the mail room supervisor.  Carey requests Defendants be charged with violations of 18 U.S.C. § 1701 (obstruction of mail generally), 18 U.S.C. § 1702 (obstruction of correspondence), and "other applicable federal and state laws." He also requests declaratory relief, damages, and relief from actions initiated by Defendant Whitley regarding imposition of disciplinaries and an increase in security classification. Doc. 1.

Defendants filed an answer, special report, and supporting evidentiary materials addressing Carey's claims for relief. Docs. 17, 18. Upon receipt of Defendants' special report, the court issued an order directing Carey to file a response, including sworn affidavits and other evidentiary materials, and specifically cautioning Carey that "the court may at any time thereafter and without notice to the parties (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment." Doc. 19 at 2. Carey responded to Defendants' report, *see* Doc. 24, but his response does not demonstrate there is any genuine issue of material fact. The court will treat Defendants' report as a motion for summary judgment, and concludes this motion is due to be resolved in favor of Defendants.

## II. STANDARD OF REVIEW

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id*. at 322−324.

Defendants have met their evidentiary burden. Thus, the burden shifts to Carey to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593−594 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate there is a genuine dispute of material fact) (internal quotations omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the non-moving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

Although factual inferences must be viewed in a light most favorable to the non-moving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

### III.  THE COMPLAINT

Carey alleges a denial of access to the courts due to interception, interference, and/or discarding of his mail by Defendants. According to the complaint, after being subjected to excessive force, sexual harassment, and due process violations, Carey filed a federal lawsuit as

3

well as complaints with the Investigative and Intelligence Division ("I&I") of the Alabama Department of Corrections ("ADOC"), the prison commissioner, the ADOC Central Board, three wardens, the justice department, and the postmaster. Carey claims, however, that "on several occasions [his] mail was found in the trash, thrown away, open[ed] and read by staff." He alleges Defendant Whitley knew of the contents of his federal lawsuit before it was filed and discussed it "in the open" and also knew that Carey had attempted to file a state habeas corpus petition. Carey maintains that he "drafted and mailed these motions 4 times. 3 times they were found in the trash and inmates and staff w[ere] aware of contents." He alleges he never received confirmation from the courts that his motions had been received, he had to redraft his § 1983 complaint five times, he received no order from the court until he gave "it" to another inmate for mailing, and that all the mail he receives from relatives goes through other inmates rather than being sent directly to him because it would otherwise be intercepted. Doc. 1 at 2-3.

## IV.  DISCUSSION

**A. Absolute Immunity**

To the extent Carey sues Defendants in their official capacities, they are immune from monetary damages. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore,

4

Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe Cty.*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing and under the facts of this case, Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Ga. Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

**B. Injunctive Relief**

Carey's request for declaratory and/or injunctive relief against Defendants is due to be dismissed as moot. Carey is no longer incarcerated at the Bullock Correctional Facility. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). As it is clear from the pleadings and records before the court that Carey is no longer incarcerated at the Bullock Correctional Facility, his request for equitable relief is moot.

**C. Criminal Charges**

To the extent Carey requests the court to consider this action as one seeking to pursue criminal charges against Defendants for the destruction or obstruction of his mail, legal or other, he is entitled to no relief. "[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973 *see also Leeke v. Timmerman*, 454 U.S. 83 (1981); *Otero v. U.S. Att'y Gen.*, 832 F.2d 141, 141 (11th Cir. 1987). Further, a plaintiff cannot maintain a civil claim against a defendant for violation of a

federal criminal statute in the absence of some expression of Congressional intent to create a private right of action. *See, e.g., Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1303 (11th Cir. 008) (rejecting notion that Congress authorized "a federal private right of action any time a civil plaintiff invokes a federal criminal statute"). Neither 18 U.S.C. § 1701 or § 1702 expressly or impliedly creates a private right of action, and federal courts have consistently refused to recognize civil claims for mail-tampering or obstruction crimes. *See, e.g., Brett v. Brett*, 503 F. App'x 130 (3d Cir. 2012) (finding no basis for civil liability in plaintiff's claim that defendants opened his mail, in violation of 18 U.S.C. § 1702, because "criminal statutes do not give rise to civil liability"); *Summer Brook Preserve Howmeowners Ass'n*, 641 F. Supp. 2d 1256, 1268 (M.D. Fla. 2008) (holding that 18 U.S.C. § 1705 "provides for criminal penalties but does not create civil liability," and dismissing plaintiff's civil cause of action predicated on violating § 1705).

**D. Due Process**

To the extent Carey's allegations regarding his mail present a due process claim for the destruction of his property, it is well established that negligent or intentional deprivations of property resulting from random, unauthorized acts of government officials do not become due process violations when there exist adequate remedies under state law for Carey to seek redress for the deprivation. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1984), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986) (overruling *Parratt* to the extent that it states that mere lack of due care by a state official may "deprive" an individual of life, liberty, or property under the Fourteenth Amendment); *Rodriguez-Mora v. Baker*, 792 F.2d 1524, 1527 (11th Cir. 1986). Because Ala. Code §§ 41-9-60, *et seq.*, provide a post-deprivation remedy for the alleged destruction and/or confiscation of Carey's property, he cannot maintain a § 1983 action based on the alleged deprivation.

E. Access to Courts

Carey challenges Defendants' conduct regarding interference with his mail claiming their conduct violated his constitutional right of access to the courts. Defendants deny violating Carey's right of access to the courts. According to Warden Jones:

> . . . I have not thrown any of inmate Carey's outgoing mail in the trash nor do I have any knowledge of inmate Carey's mail being thrown in the trash. . . . Mail containing threats, information or material that threatens institutional security or public safety, contraband, etc., is not allowed to leave the institution. Attempts by inmates to forward such mail results in disciplinary action being taken against the perpetrator and confiscation of the mail. There are over 1,500 inmates housed at Bullock Correctional Facility. Many inmates have filed lawsuits against members of the staff. I have not had a complaint about an inmate's mail (legal mail or otherwise) being thrown in the trash or not being allowed to leave the institution. I have not denied inmate Carey access to the courts and I have no knowledge of his other claims.

Doc. 18, Exh. A.

Warden Giles also denies any knowledge of Carey's mail being intercepted and states she has received no complaints regarding his mail. Warden Giles affirms that free legal mail is logged prior to being mailed out of the institution, all in-coming legal mail is logged and opened in the presence of the inmate, and the records maintained in the mailroom reflect Carey has sent and received legal mail regularly. Doc. 18, Exhs. B, H.

Warden Mason maintains Carey's allegations regarding interference with his mail are without merit and untrue. She states:

> . . . No one has intercepted [Carey's] mail. There has been no mail and/or legal mail found in the trash. No one has read any of his legal mail out-going and/or incoming. I have received no complaints from Inmate Carey regarding his mail incoming and/or outgoing until I received this law suit.
>
> Inmate Carey is presently housed in the Segregation Unit. The Correctional Officer who is assigned as the institutional rover that day, picks up all mail; to include mail from the inmate mail box located behind Cubicle Three and the mail from the Segregation Unit. The Institutional Rover then takes the mail directly to the Mail

7

> Room. There has been no complaint from any inmate housed in the Segregation Unit, to include Inmate Carey, that his mail is not being mailed out and/or that he is not receiving mail. This is the first time I have heard such an allegation from someone in the Segregation Unit. Inmates are allowed two free postages per week for legal mail. A log is kept of all outgoing legal mail that ADOC furnishes the postage. Inmate Carey has utilized this service. Any out-going legal mail that Inmate Carey provides the postage [for] is not logged. All incoming legal mail at this facility is logged.

Doc. 18, Exh. C.

Defendant Whitley denies reading, intercepting, or throwing away any of Carey's mail. He further denies knowledge of any legal work Carey filed except for lawsuits Carey filed against him and which have been served on him. Doc. 18, Exh. D.

Finally, Defendant Jenkins, Captain of Security at the Bullock Correctional Facility, states Carey never notified him verbally or in writing he was having issues with his mail or that his legal mail was being intercepted and/or destroyed. According to Captain Jenkins:

> . . . I routinely make rounds in the Segregation Unit and Inmate Carey has every opportunity to bring any concerns to my attention. Again, Inmate Carey has never said anything to me about having problems and/or concerns with his mail. Inmate Carey has been locked in a cell in the Segregation Unit since his arrival at Bullock Correctional Facility on August 22, 2013. There has never been any mail found in the trash and no employee and/or inmate has reported finding and or seeing any inmate mail in the trash since Inmate Carey's arrival at this facility on August 22, 2013. There is no evidence and/or basis to Inmate Carey's claim that his mail has been thrown in the trash.

Doc. 18, Exh. E.

Courts have regularly held that interference with an inmate's "legal mail" implicates an inmate's right of access to courts and free speech as guaranteed by the First and Fourteenth Amendments of the United States Constitution. *Procunier v. Martinez*, 416 U.S. 396, 412–413 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 413–14 (1989).

Regarding an inmate's right of access to the courts, the law is well settled that prisoners are entitled to "a reasonably adequate opportunity" to present claims of constitutional violations to the courts. *Bounds v. Smith*, 430 U.S. 817, 825 (1977). In *Lewis v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court expounded on the decision in *Bounds* and required that an inmate demonstrate the existence of an "actual injury" affecting his effort to pursue a non-frivolous legal claim to demonstrate a denial of access to the courts. Moreover, *Lewis* emphasized that a *Bounds* violation is related to an inmate's lack of capability to present claims. "*Bounds*, which as we have said guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts. When an inmate . . . shows that an actionable claim of this nature which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented, because the capability of filing suit has not been provided, he demonstrates" the requisite injury. *Lewis*, 518 U.S. at 356.

The court takes judicial notice of its own records which reflect that Carey filed a § 1983 on September 27, 2013, against, among others, Sgt. Whitley, alleging the guard subjected him to excessive force and also complaining about the destruction of items of personal property.[1] *See Carey v. Mason, et al.*, Civil Action No. 2:13-CV-705-WKW. In addition to Civil Action No. 2:13-CV-705 and the instant complaint, the records of this court reflect Carey filed two additional § 1983 complaints with this court in 2013, ten § 1983 complaints in 2014, five § 1983 complaints in 2015, and four § 1983 complaints in 2016. Legal logs maintained by the Bullock Correctional

---

[1]This court may take judicial notice of its own records and the records of other federal courts. *Nguyen v. United States*, 556 F.3d 1244, 1259 n.7 (11th Cir. 2009); *United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987); *United States v. Glover*, 179 F.3d 1300, 1302 n.5 (11th Cir. 1999)

9

Facility during the time period challenged reflect Carey routinely received mail from this court and other federal and state courts, and he also received free legal postage on numerous occasions to mail items to this court, other federal and state courts, departments of the ADOC, various attorneys, the IRS, the Department of Justice, the Alabama Department of Personnel, and the Legal Department of the United States Postal Service. Finally, ADOC personnel affiliated with Victim and Constituent Services and the I & I Division affirm receipt of complaints from Carey in October 2013. Doc. 18, Exhs. H, K.

Carey presents nothing to this court which demonstrates that the disposition of any civil action relates to any conduct of Defendants or his inability to adequately access the courts such that he experienced adverse consequences or an actual injury from the alleged deprivation as such is contemplated in *Lewis*. *Lewis*, 518 U.S. at 349.

> Inmates are not, however, guaranteed "the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims," but are only assured "[t]he tools ... need[ed] in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis v. Casey*, 518 U.S. 343, 354–55, 116 S.Ct. 2174, 2181–82, 135 L.Ed.2d 606 (1996); *see also Wilson*, 163 F.3d at 1290. "The limited types of legal claims protected by the access-to-courts right [are] nonfrivolous appeals from a conviction, habeas petitions, or civil rights suits." *Al–Amin v. Smith*, 511 F.3d 1317, 1332 (11th Cir.), *cert. denied* 555 U.S. 820, 129 S.Ct. 104, 172 L.Ed.2d 33 (2008).
>
> A constitutional prerequisite to a claim of denial of access to the courts is that the complainant must have suffered an "actual injury." *Al–Amin*, 511 F.3d at 1332. In order to show actual injury, a plaintiff must show "deterrence, such as a denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of prison officials." *Id*. (internal quotes and citations omitted).

*Hall v. Sec'y for the Dep't of Corr.*, 304 F. App'x 848, 849–50 (11th Cir. 2008) (unpublished) (alterations in original). *See also Al–Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (conclusory allegations of harm insufficient to establish requisite actual injury)

Carey has failed to come forward with any evidence that the actions of Defendants deprived him of the capability of pursuing his claims in this federal civil action or in any way hindered his efforts to pursue his claims and/or complaints before this court or any other court. He presents no admissible evidence that the actions about which he complains improperly impeded his efforts to pursue a non-frivolous legal claim. Carey, therefore, has failed to establish the requisite injury, and Defendants are entitled to summary judgment on his access to courts claim. *Lewis*, 518 U.S. at 356.

**F.  Prison Grievance Procedure**

Carey alleges Defendants interfered with his right of access to the prison grievance system. This claim entitles Carey to no relief because there is no constitutional or federal right to a grievance system while incarcerated. *Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) (an inmate has no constitutionally protected liberty interest in access to a prison grievance procedure); *see also Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1995) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure."). Because no right to a grievance system or right to receive a response to a grievance exists, Defendants are due to be granted summary judgment on this claim.

**G.  Respondeat Superior**

Carey alleges that "on several occasions [sic] [his] mail was found in the trash, thrown away, open and read by staff." Doc. 1 at 3. He further claims: 1) Sgt. Whitley knew of the contents

11

of "the 1983" before it was filed and discussed it in the open; 2) staff and inmates knew of the contents of unspecified motions which he had to file repeatedly; and 3) for Carey to send and receive mail it had to "come through other inmates." *Id.*

To the extent Carey argues that the named defendants are vicariously liable for the actions of prison staff, this claim fails as a matter of law. Supervisory personnel cannot be liable under § 1983 for a constitutional violation of one of their subordinates via a theory of *respondeat superior* or based on vicarious liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-95 (1978) (doctrine of *respondeat superior* is inapplicable to § 1983 actions); *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994) (42 U.S.C. § 1983 does not allow a plaintiff to hold supervisory officials liable for the actions of their subordinates under either a theory of *respondeat superior* or vicarious liability). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (holding that a supervisory official is liable only if he "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal connection between [his] actions . . . and the alleged constitutional deprivation."); *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996) ("a prisoner may not attribute any of his constitutional claims to higher officials by the doctrine of *respondeat superior*; the official must actually have participated in the constitutional wrongdoing."). "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Thus, Defendants are liable for the challenged conduct of their subordinates only if they "personally participate[d] in the alleged unconstitutional conduct or [if] there is a causal

connection between [their] actions . . . and the alleged constitutional deprivation[s]." *Cottone*, 326 F.3d at 1360 (citation omitted).

Here, Carey presents no evidence which creates a genuine issue of disputed fact regarding this claim lodged against Defendants. The only evidentiary materials filed in this case which could be presented at trial demonstrate these Defendants have no knowledge or involvement regarding Carey's allegation of his mail, legal or otherwise, being read, intercepted, and/or thrown away by staff. Thus, Defendants can be held liable for the actions of their subordinates only if their actions bear a causal relationship to the purported violations of Carey's constitutional rights and federal law.

To establish the requisite causal connection and therefore avoid entry of summary judgment for Defendants, Carey must present sufficient evidence which would be admissible at trial of either "a history of widespread abuse [that] put[] [Defendants] on notice of the need to correct the alleged deprivation, and [they] fail[ed] to do so . . ." or "a . . . custom or policy [that] result[ed] in deliberate indifference to constitutional rights, or ... facts [that] support an inference that [Defendants] directed [their subordinates] to act unlawfully, or knew that [they] would act unlawfully and failed to stop them from doing so." *Cottone*, 326 F.3d at 1360 (internal punctuation and citations omitted). A thorough review of the pleadings and evidentiary materials submitted demonstrates Carey fails to meet this burden.

The record before the court contains no evidence to support an inference that Defendants directed any staff to act unlawfully or knew that they would act unlawfully and failed to stop such action. In addition, Carey presents no evidence of obvious, flagrant or rampant abuse of continuing duration in the face of which Defendants failed to take corrective action. Finally, the challenged actions did not occur under a policy enacted by Defendants. The requisite causal connection,

therefore, does not exist between the actions challenged by Plaintiff and the conduct of Defendants and liability under the custom or policy standard is not warranted.

**H. First Amendment**

An inmate's allegations about the treatment of his mail may implicate a free speech claim under the First Amendment. "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al–Amin*, 511 F.3d at 1333, *citing City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993). Isolated incidents of mail interference, however, are generally insufficient to establish a constitutional violation. *Davis v. Goord*, 320 F.3d 346, 351(2d Cir. 2003) (allegation of two incidents of mail interference did not warrant relief where plaintiff failed to allege invidious intent or actual harm); *see also Florence v. Booker*, 23 F. App'x 970, 972–973 (10th Cir. 2001) ("single incident in which prison officials allegedly improperly opened legal mail" did not justify relief where plaintiff failed to "show either an improper motivation by defendants or denial of access to the courts"). Rather, the inmate must show that a prison official "regularly and unjustifiably interfered" with the inmate's mail. *Davis,* 320 F.3d at 351 (citations omitted).

Carey complains generally that he witnessed Defendant Whitley take his mail out of his door in segregation, open it, and read it, and that he gave inmate segregation runners complaints directed to all three wardens regarding problems with his mail but Defendant Whitley intercepted and threw them away. *See* Doc. 24, Carey Affidavit. Carey provides no facts regarding any specific instance of interference with his mail, legal or otherwise, nor has he alleged Defendant Whitley "regularly and unjustifiably" intercepted and/or interfered with his mail. *See Davis*, 320 F.3d at 351. As explained, isolated incidents of interference with an inmate's mail is insufficient to state a First Amendment claim. *Id.*

Here, Defendants deny any knowledge of Carey's assertions regarding interference with his incoming or outgoing mail and deny receiving any complaints or concerns from him or any other prisoner regarding issues with inmate mail. Doc. 18, Exhs. A-F. Additionally, Defendants' unrefuted evidence reflects that during the time period in question Carey routinely sent and received mail from the courts of this state, various federal and state agencies, and attorneys. Doc. 18, Exhs. H, J. Carey's allegations that Defendants interfered with his incoming and outgoing mail are wholly conclusory and unsubstantiated.[2]  "[U]nsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). *See also Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) (conclusory allegations without specific supporting facts have no probative value); *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989) ("Mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment."). In light of the foregoing, Defendants' dispositive motion is due to be granted on Carey's First Amendment claim.  *See Anderson*, 477 U.S. at 252.

**I. Mail Room Supervisor**

Carey names the mail room supervisor as a defendant alleging he sent several complaints to the mail room requesting confirmation that his legal mail was received and filed but complains he got no response. Doc. 1 at 4. An essential element of a 42 U.S.C. § 1983 action is that the conduct complained of deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States.  *Parratt v. Taylor*, 451 U.S. 527 (1981). "It is well-

---

[2] Although Carey asserted in his opposition that he would supplement the record with witness affidavits from inmates in segregation who observed Defendant Whitley take his mail, read it, and throw it away, no such affidavits were submitted. *See* Doc. 24, Carey Affidavit.

settled that § 1983 does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere." *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). Here, Carey's claim that the mail room supervisor violated his constitutional rights by failing to investigate and/or respond to his inquiry regarding receipt of his legal mail implicates no constitutional right to which he is entitled. Failing to investigate and/or respond to an inmate's inquiry, grievance, or complaint does not rise to the level of a separate constitutional violation. *See DeShaney v. Winnebago County Dept. of Soc. Serv.*, 489 U.S. 189, 196 (1989) ("The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual.").

Based on the foregoing, the court finds the actions about which Carey complains regarding Defendant Mail Room Supervisor do not rise to the level of a constitutional violation. This clam, therefore, provide no basis for relief in this 42 U.S.C. § 1983 action, and Carey's complaint against Defendant Mail Room Supervisor is, therefore, due to be dismissed under 28 U.S.C. § 1915(e)(2)(B)(i).

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion for summary judgment (Doc. 18) be GRANTED.

2. Judgment be GRANTED in favor of Defendants.

3. Plaintiff's complaint against Defendant Mail Room Supervisor be DISMISSED with prejudice under 28 U.S.C. § 1915(e)(2)(B)(i);

4. This case be DISMISSED prejudice.

5. The costs of this proceeding be taxed against Plaintiff.

It is further

ORDERED that **on or before February 1, 2017**, the parties may file an objection to the Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file a written objection to the Magistrate Judge's findings and recommendations under 28 U.S.C. § 636(b)(1) shall bar a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of a party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  11th Cir. R. 3-1; *Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, this 18th day of January 2017.

    /s/   Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE